326 P.2d 67

Alice B. MURRAY, also known as Beulah Murray, Plaintiff-Respondent,

v.

JOINT CLASS B. SCHOOL DISTRICT NO. 181, State of Idaho; Oliver Davis, Frank Maraffio, Ben Tibbits, Joseph Ziegler and Charles Hansen, the Board of Trustees of said District, Defendants-Appellants.

No. 8594.

Supreme Court of Idaho.

May 28, 1958.

Sherman F. Furey, Jr., Salmon, Jack B. Furey, Challis, Marion J. Callister, Boise, for appellants.

Keith Jergensen, St. Anthony, for respondent.

KEETON, Chief Justice.

Respondent Alice B. Murray, hereinafter referred to as plaintiff, was employed under a written contract, by appellant Joint Class B. School District No. 181, hereinafter referred to as defendant, to teach in the Stanley school in Custer County, from September 1, 1955, for the ensuing school year, at an agreed salary of $3,425 for the year. The Stanley school employed two teachers and the grades taught were the first, to and including the eighth.

The contract of employment contains, among others, the following provision:

"The teacher [plaintiff] agrees to enter upon and perform the services of a teacher at time and the places and for the duration prescribed by the District; to perform all duties of a Teacher faithfully and satisfactorily and as directed by the Sup't; and to comply with and abide by all pertinent statutes of the State of Idaho, which are hereby by reference, incorporated in and made a part of this contract as though set forth herein at length. The Teacher may be removed for just cause as provided for in Section 33-714 of the Idaho Code."

Plaintiff entered upon the performance of her duties and was paid to and including February 2, 1956, on which day, after a hearing had, hereinafter discussed, was by defendant discharged.

She instituted this suit to recover alleged damages for breach of contract claiming that she had been damaged in the sum of $1,552.40, the balance provided by the contract of employment for the balance of the school year, subsequent to February 2, 1956, and for a further sum alleged to be due her under an oral contract for the use of a teacherage connected with the school, the use of which she claimed she had been denied by acts of defendant.

In an amended answer defendant denied certain allegations of the complaint, admitted that plaintiff had been discharged on February 2, 1956, and affirmatively alleged that the reason for plaintiff's discharge

was that she had been guilty of breach of the contract sued on, continued neglect of duty flagrant unprofessional behavior, insubordination and non-cooperation.

At the conclusion of the evidence the trial judge instructed the jury that plaintiff's discharge was unlawful; that she was entitled to recover $1,552.40, the balance due on the contract, and such further sum as the jury might determine to be the value of the use of the teacherage. The jury returned a verdict against defendant for $1,686.90, apparently fixing the value of the teacherage at $164.50. On such verdict the court entered judgment against defendant for $1,686.90, with interest and costs. Appeal was taken from the judgment.

Defendant assigns error in sustaining certain objections to testimony offered; in denying a motion of non-suit; in directing a verdict for plaintiff.

Plaintiff contends that the resolution of discharge was adopted at a closed session of the school Board, hence invalid; that the evidence was insufficient to show cause for her discharge; that the procedure taken to discharge her does not comply with the laws of Idaho.

The evidence disclosed that on or about January 14, 1956, the Board passed a resolution charging plaintiff with continued neglect of duty and breach of contract, noticed her to appear on January 20th for hearing. By agreement of her attorney and defendant's attorney, the hearing was continued and not held as scheduled. In a subsequent resolution adopted by the school Board, January 30, 1956, plaintiff was charged with a violation of the provisions of paragraph 7, Sec. 33–714, I.C., neglect of duty, breach of contract, flagrant unprofessional behavior, insubordination and non-cooperation, and served plaintiff with a notice to appear on February 2, 1956, to show cause why she should not be discharged in accordance with the charges so set forth.

At the time fixed plaintiff appeared with her attorney, and hearing was had. Stenographic notes and a tape recording of the proceedings were made, and thereafter transcribed, and adopted as part of the minutes of the hearing. At the conclusion of the hearing the Board of Trustees of the district (one member not voting) voted to discharge plaintiff and entered its order to that effect.

Plaintiff testified that thereafter she was unable to secure employment and instituted this proceeding to recover damages.

On January 12, 1956, plaintiff called at the home of one of the trustees, Frank Maraffio, and indicated that there was a problem with regard to scheduling of the fifth grade at the Stanley school. She also advised Mr. Hastings, superintendent of schools, that she wanted to meet with the Board regarding the scheduling program.

88

As requested, plaintiff met with the Board on January 13th to present her problem. The Board members were unable from her presentation to determine specifically what the problem was that she desired airing, but gathered that the other teacher in the school would not follow plaintiff's scheduling instructions. The Board advised that she was not employed in a supervisory capacity, that the supervising of the school was the responsibility of the Superintendent. She then advised the Board's chairman that he did not know what he was doing, indulged in a religious dissertation and during the course of her remarks called the superintendent of schools, Mr. Hastings, a liar and a despicable contemptible coward. She then threatened suit against the trustees and criminal action against some members, without specifying the basis for such action; she further advised the trustees that she was not subject to their orders, that she was instructed by God to perform certain duties which she clearly understood; that things must be corrected in the Stanley school "or else". She then told the Board members to go to the devil, and left the room, slamming the door.

Prior to the hearing held February 2nd, plaintiff was notified by the Board and its superintendent, both orally and in writing, to discontinue teaching until the controversy then existing could be decided. Upon her refusal to comply with such order, the Stanley school was, in the opinion of the Board, in such a disorganized condition due to her actions, that it was necessary to, and the Board did, close the school pending a decision on the proceedings then pending.

The evidence further established that plaintiff had indulged in a religious discussion in the schoolroom with the sixth grade students, telling them that a prophesy of Isaiah "put our 45 years of harvest at an end in 1959 or 1960". This religious discussion upset the children and one asked if the world was coming to an end.

Without authorization from the Board or superintendent, and contrary to the superintendent's direction, she attempted to make a schedule as to what Mrs. Hansen should teach and how.

Summarizing the situation as a whole, it clearly appears that plaintiff presented a rebellious, non-conforming attitude toward the Board and the superintendent. She refused to comply with reasonable regulations or subject herself to instructions given by the Board or the superintendent; she taught and indulged in religious dissertations in the schoolroom and sought to direct how the Stanley school should be conducted and what her fellow teacher should teach, and the method of such teaching. She refused to comply with the rules and regulations governing the school system, all of which warrant the conclusion

that she failed to comply with the contract under which she was hired to teach.

Sec. 33–714, subd. 7, I.C., authorizes the Board of Trustees to discharge a teacher for continued neglect of duty or for breach of contract, after a hearing had, under procedure to be prescribed by the State Board of Education. Under this section, the State Board of Education prescribed a procedure, particularly specifying that unprofessional behavior, insubordination and non-cooperation, and refusal to comply with the school laws or regulations of the State Board of Education, is sufficient for a discharge.

Under the method of procedure so prescribed, plaintiff was given a hearing. At this hearing she appeared personally and with counsel, was given an opportunity to testify and present any evidence she might desire. All persons present were given an opportunity to be heard and when the Board declared the hearing closed neither plaintiff nor her attorney made any objection. No one, including plaintiff or her attorney, asked to be present at the deliberation of the Board of Trustees.

Sec. 33–706a, I.C., provides in part that meetings of the Board of Trustees shall be open to the public, and that no ordinance, resolution, rules or regulations shall be finally adopted at such an executive session.

The minutes of the Board disclose that after the hearing had been completed and all evidence offered received, "the Board adjourned to a closed session to deliberate and discuss and decide what action should be taken". It is the contention of plaintiff that the minute entry is conclusive of the matter and the entire proceedings are vitiated.

Defendant offered to prove that there was no executive or closed session. Such testimony was rejected.

We think defendant was entitled to show the true situation and the evidence of what actually took place should have been admitted.

The procedure prescribed by rules adopted by the Code of Fair Practice for Teachers by the Board of Education of Idaho was in our opinion complied with.

We are also of the opinion that the transcript made from tape recordings and stenographic notes of the proceedings taken February 2nd and adopted as a part of the minutes of the Board should have been admitted in evidence.

The use of the teacherage was not a part of plaintiff's written contract and even though a recovery was had for the balance of the salary as damages, nothing could be allowed for the use of the teacherage as it was not within the contract of employment.

 I am of the opinion that the judgment of the trial court should be reversed and set aside and the action ordered dismissed. The majority of the Court is of the opinion that there is a factual situation to be resolved and that the judgment should be reversed and the cause remanded with instructions to set aside the judgment and grant a new trial.

Judgment is therefore reversed and the cause remanded, with instructions to set aside the judgment and grant a new trial. Costs to appellants.

PORTER, TAYLOR, SMITH and McQUADE, JJ., concur.